IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN CONTE,<br><br>Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No.  2:10-cr-767 CW<br><br>Judge Clark Waddoups |

### INTRODUCTION

Defendant Jonathan Conte ("Conte") moves the court to suppress evidence seized during a search of Conte's vehicle.  Trooper Tanner Jensen ("Trooper Jensen") stopped Conte for improper lane change because Conte failed to signal for at least two seconds before changing lanes.  After returning Conte's documents, Trooper Jensen continued questioning Conte without indicating the outcome of the stop and then obtained his consent to search the vehicle.  Ultimately, drugs were found inside a stereo speaker.  Conte moves to suppress this evidence on the grounds that he was unlawfully detained and did not give proper consent to the search.  Based on the totality of the circumstances, the court concludes the search and seizure were unlawful and grants the motion to suppress.

### FACTUAL BACKGROUND

On August 11, 2010, Conte was driving east bound on 1-80 about ten miles outside of Salt Lake City.  Trooper Jensen saw Conte driving in the left lane while passing a vehicle that was in the right lane.  As soon as Conte passed the vehicle, he changed into the right lane.  During these events,

Trooper Jensen was driving directly behind Conte in a marked highway patrol car. He observed that when Conte initiated the lane change, he failed to signal until he was partially in the right lane. Trooper Jensen also observed that the vehicle Conte pulled in front of had to brake when Conte made the lane change. Because Utah law requires a person to signal for at least two seconds before initiating a lane change,[1] Trooper Jensen stopped Conte for a traffic violation.[2]

Trooper Jensen approached Conte's vehicle on the passenger side and explained to Conte why he had pulled him over. Due to the noise from the freeway traffic, Trooper Jensen leaned his upper body into the car and rested it against the door frame as he was talking to Conte. He asked for Conte's driver license, vehicle registration, and insurance. While Conte was producing the documents, Trooper Jensen asked Conte where he was heading and where he had been. Conte informed Trooper Jensen that he was heading to Colorado and that he had been visiting friends in California. Trooper Jensen also asked Conte how long he had been in California, to which Conte responded that he had been there for quite a while. During this exchange, Trooper Jensen observed that Conte appeared more nervous than is typical during a traffic stop. Conte's hands "were shaking, his eyes were watery, he had a difficult time constructing sentences." Hearing Tr. 18:24–19:1 (Dkt. No. 45).

---

[1] Utah Code states, "A signal of intention to turn right or left or to change lanes shall be given continuously for at least the last two seconds preceding the beginning of the movement." Utah Code Ann. § 41-6a-804(1)(b) (2011).

[2] Trooper Jensen's vehicle is equipped with a video recorder and portable microphone, which recorded the stop. Due to noise interference from traffic and wind, parts of the conversation between Trooper Jensen and Conte are not audible. Additionally, the time stamp on the recording is displayed incorrectly by approximately one hour. Nevertheless, the recording provides helpful information to the court's analysis.

Trooper Jensen also noticed that Conte was a young adult and he appeared to be just out of high school. This fact was significant to him because Conte was driving a rented vehicle, and in his experience, a young adult does not typically drive a rented vehicle alone. The vehicle had been rented in Northern California for a two-day trip. Conte had informed Trooper Jensen that he had flown to California and then rented the vehicle for his return trip. A person other than Conte, however, had rented the vehicle.

After Trooper Jensen processed Conte's information through his computer, he returned to Conte's vehicle. About four minutes had elapsed between the initial stop and Trooper Jensen's return to Conte's vehicle. In the same manner as before, Trooper Jensen leaned his upper body into the vehicle and rested it on the vehicle's door frame. As he handed back Conte's documents, Trooper Jensen stated: "Here is this stuff back for you. Mind if I ask you _____." Video Recording, 10:20:40 to 10:20:43. The final part of the sentence is inaudible due to noise interference. This statement, though, is followed by Trooper Jensen resuming his questions about Conte's time in California.

Trooper Jensen provided further information about the exchange during an evidentiary hearing. He testified as follows:

> Q. When you first approached him did you immediately give him his documents back?
>
> A. Yes.
>
> Q. What was the first conversation you had with him upon handing him back his documents?
>
> A. I asked him if it would be okay if I asked him a few more questions.

> Q. What was his response?
>
> A. Yes.
>
> Q. He said yes?
>
> A. Yes.
>
> Q. And then you engaged in conversation.
>
> A. Yes.

Hearing Tr., 24:22–25:9. In response to the court's inquiry, the United States has stated that Trooper Jensen did not have a "reasonable suspicion of unlawful activity at the point in time when he returned Conte's documents to him." Gov't Response to Order re: Mot. to Suppress, 1 (Dkt. No. 53). Instead, Trooper Jensen relied upon Conte's consent as the basis for continuing the detention. *Id.*

After the above exchange occurred, Conte and Trooper Jensen continued to engage in conversation for approximately fifty seconds, during which time Trooper Jensen tried to calm Conte down by talking in a relaxed way about Conte's trip. Conte, however, did not recall the date he had arrived in California and he gave a "pretty undefined reason why he was there, possibly visiting friends, possibly looking at schools." *Id.* at 35:21–23. Yet, he "did not know the name of the schools." *Id.* at 35:23. Throughout the conversation, Conte remained nervous. Then Trooper Jensen asked Conte "if there were any drugs or illegal things in the vehicle." *Id.* at 26:2–3. Conte shifted positions, his nervousness increased, and he started stuttering in response to the question. He denied having drugs, though. At that point, Trooper Jensen concluded "there was a good chance there would be drugs inside the vehicle just based off of how he was reacting to that question." *Id.* at

26:13–15. Trooper Jensen informed Conte about his suspicions and asked if he could search Conte's vehicle. Conte "said he didn't see the reason, but okay." *Id.* at 27:20. Trooper Jensen informed Conte that if he had any problems with the search to let him know.

Trooper Jensen then had Conte step outside of the vehicle and stand about ten feet to the right and ten feet in front of it. Trooper Jensen searched the contents of the vehicle, including those in the trunk. In the trunk, he found a large used speaker box that was taped shut. Trooper Jensen opened the box and took a stereo speaker out of it. "It looked like a pretty new speaker." Hearing Tr., 31:24. The screws at the front of the speaker, however, had tool marks on them as though they had "been tampered with." *Id.* at 31:22. Trooper Jensen had had a previous case where he found drugs inside of a speaker during a traffic stop. The tool marks, therefore, increased his suspicions about the presence of drugs.

When Trooper Jensen started focusing on the speaker, Conte called him over to seek permission "to use the restroom." When Trooper Jensen returned to look at the speaker, Conte again called him over and said he felt he was being treated unfairly. Trooper Jensen reminded Conte of his consent and said the search would not take much longer. Video Recording, 10:30 to 10:32. He then resumed his search of the speaker box. About a minute later, Conte called Trooper Jensen over a third time. Conte said he did not want the stereo harmed and revoked his consent. *Id.* at 10:33 to 10:34. Trooper Jensen then informed him that he could call a K-9 unit to avoid removing the screws. Conte "said, yes, call a K-9." Hearing Tr., 33:21. Based on the facts stated above, Trooper Jensen detained Conte while waiting for a K-9 unit to arrive. He also called for back-up, which arrived quickly. During the forty-minute wait for the K-9 unit to arrive, the officers examined the exterior of the speaker, checked its weight, questioned Conte further, and then just waited.

After the K-9 unit arrived, Conte was again questioned and the canine was then deployed. The canine alerted on the speaker box. When the officers opened the speaker, they found four containers of MDMA, otherwise known as Ecstasy. Conte moves to suppress this evidence.

## ANALYSIS

I.   **STANDARD FOR A MOTION TO SUPPRESS**

Because this case involves a warrantless search, "the government bears the burden of proving the reasonableness of a search or seizure."[3] *United States v. Kitchell*, 653 F.3d 1206, 1216 (10th Cir. 2011) (citation omitted). When considering a motion to suppress, "the credibility of witnesses, the weight accorded to evidence, and the reasonable inferences drawn therefrom fall within the province of the district court." *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009) (citation omitted). Because a videotape is present in this case, the court should view "the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381–82 (2007). Nevertheless, the court "must avoid unrealistic second-guessing of police officers' decisions." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994) (quotations and citations omitted).

---

[3] Some confusion appears to exist about who has the burden of proof on a motion to suppress. A few months before *Kitchell* was issued, the Tenth Circuit stated in another case "that the burden is on the defendant to prove that the challenged seizure was illegal." *United States v. Guerrero-Sanchez*, 412 Fed. Appx. 133, 138 (10th Cir. 2011). Where the burden is placed seems to turn on whether there was a warrantless search or seizure. *See Illinois v. McArthur*, 531 U.S. 326, 338 (2001) (Souter, J., concurring) ("Most states follow the rule which is utilized in the federal courts: if the search or seizure was pursuant to a warrant, the defendant has the burden of proof; but if the police acted without a warrant the burden of proof is on the prosecution." (quoting 5 W. Lafave, Search and Seizure § 11.2(b), p. 38 (3d ed. 1996))); *see also United States v. Sandoval*, 29 F.3d 537, 539 (10th Cir. 1994) (stating while "the proponent of a motion to suppress bears the burden of proof in general terms . . . , whenever the government relies on the consent of the defendant to validate a search the government bears the burden of proving that the consent was freely and voluntarily given") (quotations and citations omitted).

## II. DETENTION AND CONSENSUAL ENCOUNTERS

### A. Reasonable Suspicion to Initiate a Stop

"Before initiating a stop of a vehicle, an officer must have an objectively reasonable articulable suspicion that a traffic violation has occurred." *United States v. Barraza-Martinez*, 364 Fed. Appx. 453, 457 (10th Cir. 2010) (quotations and citation omitted). Conte contends that it is a close question whether he committed a traffic violation but, nevertheless, agrees this condition has been met. *See* Memo. in Supp. of Mot. to Suppress, 9 (Dkt. No. 49).

### B. Continuation of a Stop

After a valid stop has been made, the detention must "be reasonably related in scope to the circumstances which justified the interference in the first place." *Kitchell*, 653 F.3d at 1217 (quotations and citation omitted). This means, the "detention usually must last no longer than is necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." *Id.* (quotations and citation omitted). Under these parameters, an officer "may generally request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings as appropriate." *Id.* (quotations and citation omitted). Additionally, "an officer may ask questions, whether or not related to the purpose of a traffic stop, if they do not excessively prolong the stop." *Id.* (quotations and citation omitted). This includes asking brief questions about a motorist's travel plans. *Id.* at 1219 (citation omitted). Trooper Jensen followed these requirements when he initially spoke with Conte.

Although a stop may be justified at its inception, it can become unlawful if the stop "is prolonged beyond the time reasonably required to complete" its purpose. *United States v. Davis*,

636 F.3d 1281, 1290 (10th Cir. 2011).  Thus, once the purpose of the stop is completed, a driver must ordinarily "be allowed to proceed on his way." *United States v. Wisniewski*, 192 Fed. Appx. 749, 754 (10th Cir. 2006) (citations omitted).  Two exceptions to this rule are when "(1) the officer develops an objectively reasonable and articulable suspicion that the driver is engaged in some illegal activity, or (2) the initial detention becomes a consensual encounter."  *Davis*, 636 F.3d at 1290.  Here, the United States concedes that Trooper Jensen did not have "reasonable suspicion of any criminal activity, apart from [the improper lane change], sufficient to prolong the stop beyond investigation of the traffic offense."  *United States v. Guerrero-Espinoza*, 462 F.3d 1302, 1308 (10th Cir. 2006).  Instead, it relies upon the second exception.  The court therefore focuses on whether Conte consented to the continued detention.

      **C.**    **Consensual Encounters**

The Tenth Circuit "follows the bright-line rule that an encounter initiated by a traffic stop may not be deemed consensual unless the driver's documents have been returned to [him]." *Id.* at 1308–09 (quotations, citations, and alteration omitted).  Returning a driver's documents, however, is not "always sufficient to demonstrate that an encounter has become consensual."  *Id.* at 1309 (quotations and citation omitted); *see also United States v. Sandoval*, 29 F.3d 537, 540 (10th Cir. 1994)*.*  Thus, once documents have been returned, courts look at whether "the driver . . . has an objective reason to believe that he was not free to end his conversation with the law enforcement officer and proceed on his way." *Sandoval*, 29 F.3d at 540 (quotations and citation omitted). Factors that may be relevant to this analysis include, "the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that

compliance might be compelled." *Id.* at 540–41 (quotations and citation omitted).

None of these factors are present in this case. Throughout the relevant exchange, Trooper Jensen maintained a calm, professional demeanor. He did not display a weapon, touch Conte, or use a commanding tone of voice. Moreover, he was the only officer present at the scene. These factors, however, "are only examples" and "not an exhaustive compendium[] of criteria that may be considered" in the court's analysis. *Id.* at 541 (citation omitted) (finding driver unlawfully detained even though none of the above factors were present). Instead, the court's charge is to look at the totality of the circumstances.

In this case, the most critical fact is not what Trooper Jensen did, but what he did not do. When he returned Conte's documents to him, Trooper Jensen never informed Conte about the outcome of the stop. He did not say whether he was giving him a citation or merely a warning. He did not wish him a "good day," say he was free to go, or otherwise indicate that the stop was over by disengaging from the communication. Instead, while leaning the upper part of his body in the car, Trooper Jensen handed Conte back his documents and then immediately asked if he could ask Conte more questions.

Because Conte had been given no warning or citation, he could not know the traffic stop had ended. *See Guerrero-Espinoza*, 462 F.3d at 1310. "More to the point, a reasonable person in [Conte's] position would not have felt free at that time to decline to answer the trooper's questions and instead leave." *Id.* Indeed, under the circumstances, "May I ask you some additional questions?" is similar in nature to "May I see your license and registration?" Although worded as questions, circumstances can change them into polite commands. "No one . . . after having been

stopped by [an] officer for a perfectly legitimate reason . . . can reasonably view himself or herself as free to leave," *Sandoval*, 29 F.3d at 542, when an officer has failed to inform the driver about the outcome of the stop.[4]  This is particularly so when leaving would cause injury to an officer due to the officer's contact with the driver's vehicle.  The court, therefore, concludes that Conte was unlawfully detained after Trooper Jensen returned his documents to him.

        2.        Removal of Taint

After Trooper Jensen unlawfully detained Conte, he asked if he could search Conte's vehicle.  Conte said okay.  Thus, "[a] question remains as to whether [Conte's] consent to the search of his vehicle cleansed the taint of the unlawful detention, thereby validating the search." *United States v. McSwain*, 29 F.3d 558, 562 (10th Cir. 1994).  Again, "[t]he government bears the burden of proving the voluntariness of consent, and that burden is heavier when consent is given after an illegal detention." *Id.* (quotations, citations, and alteration omitted).  The court looks at the totality of the circumstances, but especially notes "the temporal proximity of the illegal detention and the consent, any intervening circumstances, and particularly, the purpose and flagrancy of the officer's unlawful conduct." *Id.* (quotations and citations omitted).

In *McSwain*, an officer stopped a vehicle to verify the validity of a registration sticker.  Rather than ending the stop when he found it valid, the officer continued to question the driver.  Ultimately, he asked for consent to search the vehicle and found drugs and a firearm.  The court

---

[4] The Tenth Circuit has stated that an officer is not required to inform a driver he is free to leave before a stop can become a consensual encounter.  Informing a driver, however, about the outcome of the stop, through a citation or a verbal or written warning, is different from actually telling a driver he is free to leave.  In truth, the very purpose of a traffic stop is to cite or warn a driver about his behavior.

found that the officer used a pleasant tone during the conversation, but he "was leaning over and resting his arms on the driver's door when he asked for consent to search." *Id.* at 563. Moreover, the officer "failed to specifically inform Mr. McSwain that he was free to leave the scene or that he could refuse to give his consent." *Id.* Although not required, these were "important factors in [the court's] consideration" of whether McSwain's consent was voluntary. *Id.* (quotations and citations omitted).

The court also found that McSwain's consent occurred only minutes after the illegal detention and that there were no intervening circumstances. Consequently, "there was no break in the causal connection between the illegality and the evidence thereby obtained." *Id.* (quotations and citation omitted). With respect to the third factor, the court found the additional questioning had "a quality of purposefulness" because the officer embarked on "a fishing expedition 'in the hope that something might turn up.'" *Id.* (quoting *Brown v. Illinois*, 422 U.S. 590, 605 (1975)).

As stated before in this case, Trooper Jensen maintained a calm, professional demeanor throughout the encounter. As in *McSwain*, however, he leaned into the vehicle and rested on the door. Although the court does not find that Trooper Jensen did this in an effort to intimidate Conte, his actions, combined with failing to inform Conte the stop had concluded, suggest Conte's consent was not voluntary. Furthermore, Conte's consent was given less than a minute after the illegal detention and there were no intervening circumstances. These "factors weigh heavily against finding the taint cleansed." *Id.* Finally, with respect to the third factor, when Trooper Jensen engaged Conte in additional conversation he had no articulable suspicion of criminal activity. Instead, his questions were designed to see if something would turn up. The questions were purposeful and devised to see

if Conte would implicate himself. Based on the totality of these facts, the court concludes that the taint of the unlawful detention had not been removed and Conte's consent was invalid. Accordingly, the court hereby suppresses the evidence found during the search.

## **CONCLUSION**

For the reasons stated above, the court hereby GRANTS the motion to suppress.[5]

DATED this 8th day of February, 2012.

BY THE COURT:

_____
Clark Waddoups
United States District Judge

---

[5] Dkt. No. 11.